IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| KENNETH KAUTSCH, RAYMOND LEIGH YOUNG, ALAN HIGGINS, LOUIS WATKINS, RANDY MALLICOAT, JASON HOUSTON, and ROGER CAMDEN on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 06-cv-04035-NKL |
| PREMIER COMMUNICATIONS and SCOTT AQUINO, | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is Plaintiffs' Motion for Class Certification and to Amend the Complaint [Doc. # 21]. In their Motion, Plaintiffs ask the Court to (1) "conditionally certify a class of all persons formerly and/or presently employed by defendants as a technician during the notice period" [Pls' Mot. at 1], (2) approve Plaintiffs' notice to potential class members, (3) require Defendants to produce a list of all potential class members, (4) grant Plaintiffs leave to amend their Complaint to add additional defendants and (5) toll the statute of limitations for Jefferson City technicians. For the reasons stated herein, Plaintiffs' Motion will be granted in part.

**Motion to Amend**

Plaintiffs move the Court for leave to amend their Complaint by adding Premier Satellite of Oklahoma, LLC ("Satellite"), and Premier Investment Services, Inc. ("Investments"), as defendants. Plaintiffs assert that Satellite, Investments and Defendant Premier Communications ("Communications") are, in essence, the same employer.

Defendant Scott Aquino owns and serves as CEO of both Satellite and Communications. In addition, both Satellite and Communications have the same president, chief financial officer and head of payroll.

Plaintiffs worked for Communications, but were paid, and in some cases hired, by Investments. All Satellite and Communications' employees receive the same employment manual and sign the same "Employee Agreement." Both the manual and the agreement contain the Premier Communications, Inc., logo and name. When employees are transferred between the companies, they retain the same identification number and Communications' master list of technicians includes both Communications and Satellite employees.

The Court will grant a party leave to amend its complaint whenever such amendment serves the interest of justice. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) (holding that leave to amend should be granted unless such leave would cause undue delay, results from bad faith on the part of the movant or would unduly prejudice the opponent). Plaintiffs represent that Communications, Satellite and Investments are, for all practical purposes, the same entity. For their part, Defendants

have not challenged Plaintiffs' assertions. Plaintiffs also represent, and Defendants do not dispute, that Plaintiffs only recently learned of the interrelation of Communications, Satellite and Investments and that each has been actively involved in this litigation since its inception. The Court finds no bad faith motive on the part of Plaintiffs in moving to amend. In addition, amending the complaint would not cause undue delay or prejudice the Defendants. Therefore, the Court grants Plaintiffs leave to amend their Complaint for the purpose of adding Satellite and Investments as defendants. Throughout the remainder of this Order, Defendants Communications, Satellite, Investments and Scott Aquino will be referred to collectively as "Premier."

**Plaintiffs' Motion to Toll the Statute of Limitations**

Plaintiffs move the Court to toll the "3 year statute of limitations for the Jefferson City employees" until August 2005 because the FLSA poster was not posted until then. [Pls' Mot. at 13.] Premier does not dispute Plaintiffs' representation that the FLSA poster was not posted in Jefferson City until August 2005. Nonetheless, the Court denies without prejudice the Plaintiffs' Motion to toll the statute of limitations. The notice of class certification will be broad enough to include all possible class members, and the issue of tolling will be resolved once it is clear which class members want to opt in. The issue is not yet sufficiently developed.

**Motion for Conditional Certification**

**I. Background**

Plaintiffs are seven former Premier field service technicians who claim that Premier denied them proper overtime compensation and, in some instances, failed to pay them minimum wage. Plaintiffs seek conditional certification of a class of persons formerly and/or presently employed by Premier as technicians during the notice period. [Pls' Mot. at 1.]

## II. Facts

The technician's job is to install DirecTV systems, do upgrades and make service calls in customers' homes and commercial buildings. Technicians are given work orders and locations. Using the information in the work orders, technicians make nightly calls to customers to organize their next day's schedule. At the end of each week, the technicians turn in their weekly time sheets, as well as their work orders.

Technicians are paid a "piece-rate." In other words, technicians are paid "by the job" instead of "by the hour." No two technicians have identical circumstances. Some work longer hours than others. Some take longer to complete a job than others. And, some have a company car while others use a private vehicle. Despite these differences, Premier requires all technicians to submit weekly time sheets from which Premier is able to determine whether it is in compliance with the Fair Labor Standards Act ("FLSA") and whether technicians are owed any overtime pay. The individual technician is responsible for turning in accurate and complete time sheets.

Plaintiffs have testified in depositions and submitted sworn affidavits that they were told by Premier managers to change their time sheets to reflect 40 or fewer hours of

work per week. In fact, CEO Scott Aquino told managers during a conference call to "make sure that the techs keep their weekly time sheets at 40 hours and below." [Pls' Mot. at 3.] Plaintiffs complied with this directive without ever complaining. For their part, Premier's managers have provided sworn affidavits denying that they directed the technicians to not report more than 40 hours of work per week.

Plaintiffs have also testified in depositions and submitted sworn affidavits that Premier maintained a blanket prohibition against counting job-to-job travel time or attendance at mandatory weekly team meetings as hours worked. But, at least one plaintiff testified that he was never told whether or not to include time spent in weekly team meetings on his time sheets.

In addition to taxes and mandated withholdings, Premier makes various deductions from technicians' paychecks. Authorized deductions include: "No Call No Show Escalation," "Failed Quality Control Inspection," "Lost Hardware," "Past Open Work orders," "Settled Home Damage Claims," "Service within 30 work orders," "Drop Material and Fuel Costs (if employee is a company fuel card holder)." [Pollack Decl. Ex. 16.] On two occasions, Plaintiff Watkins had so many deductions that he effectively made less than minimum wage. In addition, Plaintiff Mallicoat was never paid for his last week of work with Premier.

## III. Discussion

### A. Class Certification

Section 216(b) of the Fair Labor Standards Act provides that an employee may bring an action for himself and other employees "similarly situated." 29 U.S.C. § 216(b). A 216(b) collective action differs significantly from Fed. R. Civ. P. 23 class actions. A primary difference between the two is that, under § 216(b), a similarly situated employee must "opt-in" to the collective action to be bound by the proceeding's outcome whereas, under Rule 23, a similarly situated plaintiff must "opt-out" to avoid being similarly bound. 29 U.S.C. § 216(b); Fed. R. Civ. P. 23.

Federal courts have used varying standards to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b). *Davis v. Novastar Mortgage, Inc.* , 408 F. Supp.2d 811, 815 (W.D. Mo. 2005). Though the Eighth Circuit Court of Appeals has not indicated which standard should be used, a majority of the district courts in the Eighth Circuit use the two-step analysis adopted in *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995). *See, e.g., Davis*, 408 F. Supp.2d 811; *Kalish v. High Tech Institute, Inc.*, 2005 WL 1073645 (D. Minn. 2005); *Dietrich v. Liberty Square L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005); *McQuay v. American Int'l Group, Inc.*, 2002 WL 31475212 (E.D. Ark. 2002).

Under this two-step process, the plaintiff first moves for class certification for notice purposes. The plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class. *Mooney*, 54 F.3d at 1213-14; *Grayson v. K Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated"

standard is considerably less stringent than Rule 23(b)(3) class action standards). At this early stage of litigation, the Court does not reach the merits of the plaintiff's claims. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citation omitted). Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to "opt-in." *Mooney*, 54 F.3d at 1214.

At the second step of the process, the defendant may move to decertify the class. This is typically done after the close of discovery when the Court has much more information and is able to make a more informed decision. *Id*.

Premier argues that, because the parties have engaged in discovery, the Court should skip the "notice" step and move directly to a second-step evaluation of Plaintiffs' Motion for Class Certification. *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *3 (C.D. Cal. 2004) (court proceeded directly to the second stage of certification where parties did not dispute that discovery had been undertaken); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 498 (D. N.J. 2000) (applying a stricter standard where discovery had been completed).

In the instant case, the parties have conducted discovery for almost seven months and Premier has produced over 4,000 pages of documents. Notwithstanding Premier's document production to date, the parties agree that discovery is not yet complete. [Defs' Opp. at 17.] Indeed, Premier is in the process of producing an additional 7,000 pages of documents, three plaintiffs have yet to be deposed and two depositions of Premier personnel have yet to be conducted. [Defs' Opp. at 17.] Because discovery has not been

substantially completed, the Court finds that Plaintiffs' Motion should be evaluated under the more lenient "notice stage" criteria.

**B. Similarly Situated**

The FLSA does not define the term "similarly situated." But, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 306 (S.D.N.Y. 1998); *Davis*, 408 F. Supp.2d at 815 (noting that, at the notice stage, conditional certification "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Plaintiffs need not show that members of the conditionally certified class are actually similarly situated. That determination will be made after the close of discovery. *Davis*, 408 F. Supp.2d at 815.

In this case, Plaintiffs assert that the class members would be similarly situated in that: "(i) all technicians do the same work; (ii) all technicians are paid pursuant to the same piece-rate procedure; (iii) all technicians have the same workweek and hourly schedule; (iv) all technicians are required to submit uniform job order reports; (v) all technicians are required to follow the same time sheet policy; (vi) all technicians submit the same weekly hours-worked report; (vii) all technicians receive the same employee manual; (viii) all technicians sign the same employment agreement; (ix) all technicians follow substantially the same policy for 'no-show' jobs; (x) all technicians follow the

same policy of not submitting travel time; (xi) all technicians did not count as time worked participation in mandatory team meetings; (xii) all technicians did not count as time worked nightly pre-calls to the next day's customers." [Pls' Mot. at 12.]

Plaintiffs also assert that "defendants maintained company-wide policies and practices preventing all technicians from receiving overtime compensation and/or minimum wage." [Pls' Mot. at 11.] Plaintiffs have testified in depositions and submitted sworn affidavits that Premier managers directed them to change their time sheets to reflect not more than 40 hours of work per week and prohibited them from claiming job-to-job driving time and time spent at the mandatory weekly team meeting. Furthermore, at least one manager has testified that CEO Scott Aquino instructed managers during a telephone conference to "make sure that the techs keep their weekly time sheets at 40 hours or below." [Pl's Mot. at 3.]

Premier disputes that Plaintiffs are similarly situated. Premier cites deposition testimony from one plaintiff that he did not remember whether he was told not to account for weekly team meetings on his time sheet. Premier also disputes that all employees received the same employment manual or that all technicians did the same job, were paid the same or submitted identical forms and reports. To be similarly situated, however, class members need not be identically situated. *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997). In this case, all technicians perform essentially the same job for the same employer and are paid using Premier's piece-rate system regardless of their geographic location. Furthermore, CEO Aquino's instruction that technicians need to

keep their weekly time sheets at 40 hours or below was given to all managers regardless of geographic location. And, Plaintiffs have submitted evidence that Premier maintains a deductions program that on some occasions results in the employee earning less than minimum wage.

The "similarly situated" threshold requires only a modest factual showing.[1] *Realite*, 7 F. Supp.2d at 306; *Davis*, 408 F. Supp.2d at 816 (noting that declarations provide appropriate support for conditional certification); *Boyle v. Barber & Sons, Co.*, Case No. 03-0574-CV-W-FJG (W.D. Mo. 2004) (granting conditional certification based on the affidavit of one former employee). And, at the notice stage, the Court does not reach the merits of Plaintiffs' claims.[2] *Hoffmann*, 982 F. Supp at 262 (citation omitted). Therefore, given the lenient notice standard, the Court finds that Plaintiffs have met their burden to show that conditional certification is proper.

**C. Notice to Potential Class Members**

In its response to Plaintiffs' Motion to Toll, Premier argues that, if the Plaintiffs wish to allege willful violations of the FLSA, they should do so via a separate motion.

---

[1] Premier argues that, in order to obtain conditional class certification, Plaintiffs must show that other technicians wish to opt-in to the class. *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). The Court is unaware of any court outside of the Eleventh Circuit that has adopted this requirement. Based on Premier's argument, the Court declines to impose such an obligation.

[2] Premier asserts that some technicians are excluded from overtime requirements pursuant to the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), which exempts from FLSA requirements employees who move goods in interstate commerce. Premier further argues that any such technician should be excluded from the class. [Defs' Opp. at 26.] Even if true, the possible future exclusion of some technicians is not grounds for not conditionally certifying the class.

FLSA violations are subject to a two-year statute of limitations unless the violation is willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). Whether Premier violated the FLSA and whether any such violations were willful pertain to the merits of this action and are not properly entertained at this early stage of the proceeding. At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs. *See, e.g., Vaicaitiene v. Partners in Care, Inc.*, 2005 WL 1593053 at *7 (S.D.N.Y. 2005). Therefore, any notice sent will assume a three-year statute of limitations.

The Court has reviewed the Plaintiffs' proposed notice for non-Jefferson City technicians (Doc. # 22, Ex. 1) and Jefferson City technicians (Doc. # 22, Ex. 2). The Court finds them substantively sound, and, thus, approves the notices, subject to Plaintiffs correcting the typographical errors in the notices supplied to the Court.

Finally, Plaintiffs request that Premier be ordered to produce a list of all potential class members including their last known mailing address and that such list be in excel spreadsheet format. Plaintiffs are entitled to the information they request. Therefore, Premier will produce a list of all potential class members including their last known mailing address. The list must be produced in a usable format; Premier need not convert its list to Plaintiffs' preferred format.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Conditional Class Certification is GRANTED;

ORDERED that Plaintiffs' Motion for Leave to Amend the Complaint is GRANTED;

ORDERED that Plaintiffs' Motion pertaining to the tolling of the statute of limitations is DENIED without prejudice;

ORDERED that Plaintiffs' Notice to potential class members is APPROVED, subject to technical corrections; and

ORDERED that Defendants must produce a list of all potential class members, including their last known address.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 23, 2007
Jefferson City, Missouri