IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

KENNETH KAUTSCH, RAYMOND )
LEIGH YOUNG, ALAN HIGGINS, LOUIS )
WATKINS, RANDY MALLICOAT, )
JASON HOUSTON, and ROGER CAMDEN )
on behalf of all others similarly situated, )
                                           )
            Plaintiffs,                    )
                                           )
      v.                                   )  Case No. 06-cv-04035-NKL
                                           )
PREMIER COMMUNICATIONS, et al.,            )
                                           )
            Defendants.                    )

ORDER

Plaintiffs are seven individuals who worked as field service technicians for Defendant Premier Communications and have brought suit on behalf of themselves and similarly situated technicians against Defendants Premier, Premier Satellite of Oklahoma, LLC, Premier Investment Services, Inc., and Scott Aquino (collectively, "Premier") for violating the Fair Labor Standard Act's ("FLSA") overtime and minimum wage requirements. Pending before the Court is Premier's Motion for Decertification [Doc. # 80]. For the reasons stated herein, Premier's motion is DENIED.

I.  **Facts**

The background facts of this case are set forth in the Court's earlier rulings and are duplicated here only to the extent necessary. (Docs. 45, 74). Premier is a company whose technicians install DirecTV systems, perform upgrades and make service calls in

1

customers' homes and in commercial buildings. Premier pays its technicians for each job performed and assigns a specific code for each job category. This compensation scheme is called "piece rate" because the technicians are paid per job rather than by hourly wage. Each technician begins work at approximately 8:00 a.m. and finishes the work day with the completion of the day's final job. Premier adds the job codes on a completed work order to determine each technician's pay. In order to ensure compliance with FLSA's overtime and minimum wage requirements, Premier alternatively calculates an hourly rate per pay period based on hand-written time sheets submitted weekly by technicians.

Plaintiffs allege that Premier committed several violations of FLSA: 1) Premier failed to meet FLSA's overtime requirements based on the time sheets submitted; 2) Premier instructed technicians not to claim overtime; 3) Premier maintained a blanket prohibition against counting job-to-job travel time or attendance at mandatory, weekly team meetings as hours worked; and 4) in addition to taxes and withholding, Premier made various deductions from technicians' paychecks which in some cases resulted in pay below minimum wage. On October 4, 2007, Premier acknowledged that it failed to make certain overtime payments to Plaintiffs and Premier voluntarily reviewed its records to pay overtime due based on weekly time sheet submissions. (Doc. 67).

On January 23, 2007, this Court conditionally certified Plaintiffs' action for collective treatment under 29 U.S.C. § 216(b). Premier argues that the evidence does not support continued collective treatment because the Plaintiffs' job duties, hours worked and time-keeping practices are not sufficiently similar.

## II.     Decertification

Plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *see also* 29 U.S.C. § 216(b).  On a motion to decertify, Plaintiffs must demonstrate a "reasonable basis" for their claim of a class-wide violation.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).  To show that they are similarly situated, Plaintiffs may present evidence to show that an employer engaged in a unified policy, plan, or scheme of FLSA violations. *Grayson*, 79 F.3d at 1095-96.  Such a showing is not required, however, if Plaintiffs can otherwise show that their positions are "similar, not identical, to the positions" held by the other class members.  *Hipp*, 252 F.3d at 1217, 1219.

District courts weigh three factors when determining whether a 216(b) collective action is appropriate for adjudication of opt-in employees' claims: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002).  Even where factors (1) and (2) weigh in favor of decertification of a provisionally certified class, the district court must balance those factors with the fundamental purpose of 29 U.S.C. § 216(b): (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves "common issues of law and fact that arose from

3

the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000).

Premier focuses on Plaintiffs' employment settings and job duties, contending that Plaintiffs failed to sufficiently allege a pattern or practice of FLSA violations and that Plaintiffs are not similarly situated because their claims involve different job duties, different hours worked, different allegations about the manner in which technicians are paid, and differences in the time-keeping practices of technicians. Premier further contends that there are individual defenses which it may assert against each Plaintiff and that fairness and procedural considerations do not weigh in favor of maintaining a collective action in this case. For example, Premier claims that it is entitled to assert defenses based on testimony that 1) some technicians reported all of their time worked on their time sheets; 2) some "work" performed was not compensable under the FLSA; and, 3) not all supervisors directed their technicians to under report time worked. (Premier Br., 18-20).

In support of its argument that the class should be decertified, Premier cites *Jiminez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 U.S. Dist. LEXIS 91989 (W.D. Mich. Dec. 14, 2007). In that case, the district court refused to certify a class of piece-rate berry gatherers because they failed to allege the existence of any uniform policy which violated the FLSA. *Id*. The district court concluded that while the defendant's poor record-keeping may have resulted in pay below minimum wage, the inquiry necessary to determine any liability was necessarily individualized. *Id*. Similarly, Premier contends

4

that Plaintiffs have failed to provide a reasonable evidentiary basis for their claim that Premier employed a policy or practice of denying overtime pay or instructing technicians not to report overtime. (Premier Statement of Facts ("SOF") ¶¶ 65-66). Where Premier failed to pay certain Plaintiffs overtime, it claims that it did so under a "good faith" belief that Plaintiffs were exempt for purposes of FLSA compensation rules.

Plaintiffs have presented some evidence that suggests that Premier engaged in a pattern and practice of failing to pay Plaintiffs proper overtime wages, of instructing technicians not to report overtime and of changing time sheets to deprive technicians of overtime pay. (Pl. Br., 2-4). There is evidence that Premier knew that its technicians were non-exempt employees for purposes of the FLSA. (Pl. Ex. B) (citing Premier's employee manual). One plaintiff, who spent one week as a manager, overheard Premier CEO Scott Aquino direct managers to "make sure that the techs keep their weekly time sheets at 40 hours and below." (Mallicoat Dep., 101).[1] There is also evidence that some managers instructed their techs to not report overtime. This evidence gives rise to an inference that Premier maintained a top-down, centralized policy regarding overtime. Premier's evidence that some Plaintiffs were not told that Premier forbids submitting overtime is not sufficient to defeat similarity. Based on the evidence before the Court, which shows some employees were told not to report overtime or travel time, a fact-finder

---

[1] At oral argument, Premier argued that the fact that only one technician heard Aquino's statement, while many had never met Aquino, proves dissimilarity. The Court disagrees. If a juror believes Mallicoat's statement, that juror could also infer that Premier's policy was class-wide; particularly, in light of Premier's allegation that it didn't pay overtime because it thought certain employees were exempt.

5

could conclude that Premier maintained a policy that technicians were not to claim overtime or travel time, even if not every one of 743 technicians was personally instructed by a manager not to claim overtime.

The allegations of a uniform policy of denying overtime backed by deposition testimony and other evidence sufficiently distinguish *Jiminez*, where no such evidence was presented. *Moss*, 201 F.R.D. at 410-11 ("Irrespective of these differences [in job duties, geographic assignments and hourly billing rates], each of the plaintiffs assert a common claim; i.e. that [the defendant] violated the FLSA by failing to compensate them with overtime wages for their work."); *Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201 and 05-6627 (E.D. La. Aug. 21, 2007) ("[Defendant's] arguments about individual defenses go to the amount of damages due to each plaintiff for unpaid overtime. The need for this type of straightforward inquiry is not sufficient to defeat the propriety of collective action.").

Even if Plaintiffs had not met their burden by submitting plausible evidence of a company-wide policy denying overtime pay, Plaintiffs may use representative evidence to establish an employer's pattern and practice of violating FLSA. *See Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973). Eighty-six Plaintiffs, or 40% of the 210 Plaintiffs responding to Premier's interrogatories and discovery requests, stated that they were told not to report more than 40 hours. (Pl. Ex. F). Forty-three Plaintiffs, or 20% of those responding to Premier's interrogatories and discovery requests, stated that Premier instructed them not to include travel time. (Pl. Ex. K). Fifty-two

6

Plaintiffs stated that their time sheets were changed or were ordered to change their time sheets. (Pl. Ex. M). Even if the Court took these responses as representative of all 743 Plaintiffs, instead of just those responding to discovery, this testimony is sufficiently representative to permit the collective action to go forward. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (testimony of 6 employees from 6 restaurants with stipulations as to similar testimony from 20 other employees sustained award for 246 employees); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982) (testimony of 23 employees sustained award for 207 employees); *McLaughlin v. DialAmerican Marketing, Inc.*, 716 F. Supp. 812 (D.N.J. 1989) (testimony of 43 researchers sufficiently representative of 393 opt-in researchers).

Even if Premier convinced the Court that some differences in employee job settings and individual defenses weighed against class certification, fairness and procedural considerations would still justify collective treatment of the Plaintiffs' claims. As Premier noted, 521 opt-in Plaintiffs failed to respond to Premier's interrogatories and discovery requests. Collective adjudication will result in a binding judgment as to those Plaintiffs who are all similarly situated procedurally. Adopting Premier's position as to decertification may result in 743 individual trials, which is not efficient. While some subclasses may be necessary to maximize efficiency, separate trials is the worst possible outcome in terms of efficiency.

At oral argument, Premier argued that decertification would not bar individual Plaintiffs from bringing his or her individual claim, but the effect of decertification would

be to place each opt-in Plaintiff back at square one without the benefit of pooled resources to resolve the common question of whether Premier had a policy to deny overtime and minimum wage compensation. Such a result is antithetical to the policy behind collective actions under § 216(b) of the FLSA: allowing plaintiffs to vindicate their rights by "efficient resolution in one proceeding of common issues of law and fact" arising from the same improper practice. *See Hoffman-La Roche, Inc.*, 493 U.S. 165, 170 (1989); *see Glass v. IDS Fin. Servs. Inc.*, 778 F. Supp. 1029, 1081-82 (D. Minn. 1991).

Finally, Premier's evidence weighing in favor of decertification goes mostly to damages. The court may create damages subclasses if plaintiffs establish liability at trial. *See Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 434 n.3 (D. Kan. June 20, 2007). In addition, Plaintiffs have separately alleged violations of Premier's record keeping requirements under the FLSA. *See* 29 U.S.C. § 211(c). Once an employee proves violations of the FLSA by just and reasonable inference, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to dispute the reasonableness of the inference to be drawn from the employee's evidence. *Dove v. Coupe*, 759 F.2d 167, 174 (D.C. Cir. 1985). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate . . . ." *Id.* An employer may not benefit from its failure to keep employment records as required under 29 U.S.C. § 211(c). *Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that

would be possible had he kept records in accordance with [29 U.S.C. § 211(c)]. . . . It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." *Dove*, 759 F.2d at 174. Because there is a common question of whether Premier kept records in compliance with the FLSA, decertification even on the issue of damages is not warranted at this time.

Although the Court acknowledges that Premier has raised relevant differences between technicians, particularly their time-keeping habits, the weight of authority and the preservation of judicial resources favor collective adjudication. While it will be difficult to handle all these claims in a single lawsuit, it will be more time consuming and difficult to handle them separately.

Accordingly, it is hereby

ORDERED that Premier's Motion for Decertification [Doc. # 80] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 31, 2008
Jefferson City, Missouri