IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

KENNETH KAUTSCH, RAYMOND LEIGH YOUNG, ALAN HIGGINS, LOUIS WATKINS, RANDY MALLICOAT, JASON HOUSTON, and ROGER CAMDEN on behalf of all others similarly situated,

Plaintiffs,

v.

PREMIER COMMUNICATIONS, et al.,

Defendants.

Case No. 06-cv-04035-NKL

ORDER

Plaintiffs are seven individuals who worked as field service technicians for Defendant Premier Communications and have brought suit against Defendants Premier, Premier Satellite of Oklahoma, LLC, Premier Investment Services, Inc., and Scott Aquino (collectively, "Premier") for violating the Fair Labor Standard Act's ("FLSA") overtime and minimum wage requirements. Pending before the Court are Plaintiffs' Motions for Partial Summary Judgment [Docs. 75, 82]. For the reasons stated herein, the motions are GRANTED in part and DENIED in part.

## I. Background

The background facts of this case are set forth in the Court's earlier rulings and are duplicated here only to the extent necessary. (Docs. 45, 74). Premier is a company whose technicians install DirecTV systems, perform upgrades and make service calls in

customers' homes and in commercial buildings. Premier pays its technicians for each job performed and assigns a specific code for each job category. This compensation scheme is called "piece rate" because the technicians are paid per job rather than by hourly wage. Generally, technicians officially begin work at approximately 8:00 a.m. and finish with the completion of the day's final job. Premier adds the job codes on a completed work order to determine each technician's pay. To check compliance with FLSA's overtime and minimum wage requirements, Premier alternatively calculates an hourly rate per pay period based on hand-written time sheets submitted weekly by technicians.

Prior to May 16, 2007, Premier treated technicians as exempt from receiving overtime under the FLSA's "motor private carrier" exemption. (Premier Letter to DOL, June 6, 2005 n.1). The "motor private carrier" exemption applied if (1) the person transported property by motor vehicle; (2) the person was engaged in interstate commerce; (3) the person was the owner, lessee, or bailee of the property being transported; (4) the property was being transported for sale, lease, rent, or bailment or to further a commercial enterprise; and (5) the person had some effect on the vehicle's "safety of operation." On August 10, 2005, the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") amended 49 U.S.C. § 13102, by adding the word "commercial" before "motor vehicle." Pub. L. No. 109-59, 119 Stat. 1144 (2005). As a result, after August 10, 2005, Premier technicians, who

transported equipment in non-commercial vehicles, did not qualify for the "motor private carrier" exemption.[1]  (Doc. 45).

Plaintiffs allege that Premier committed several violations of FLSA: 1) Premier failed to meet FLSA's overtime requirements based on the time sheets submitted; 2) Premier instructed technicians not to claim overtime; 3) Premier maintained a blanket prohibition against counting job-to-job travel time or attendance at mandatory weekly team meetings as hours worked; and 4) in addition to taxes and withholding, Premier made various deductions from technicians' paychecks which in some cases resulted in pay below minimum wage.

On October 4, 2007, Premier acknowledged that it failed to make certain overtime payments based on weekly time sheets which had been submitted by Plaintiffs. (Doc. 67). Premier has now made payments for that overtime. After Premier admitted that overtime was owed, the Court ordered Premier to pay the overtime due, reserving any disputed issues about liquidated damages and additional overtime due. Plaintiffs now move for partial summary judgment on three grounds: 1) FLSA entitles Plaintiffs as a matter of law to liquidated damages on the unpaid overtime the Court ordered Premier to pay on October 4, 2007; 2) Plaintiffs are entitled to summary judgment on certain minimum wage claims; and 3) Premier violated as a matter of law FLSA's record keeping requirements because they failed to produce payment records for Plaintiffs' hours worked and total earnings.

---

[1]Technicians used their personal vehicles for travel.

## II. Discussion

### A. Declaration of Plaintiffs' Counsel

Premier argues initially that the declaration and supporting attachments supplied by Plaintiffs' counsel are unreliable and inadmissible. *See Logan v. City of Pullman*, 392 F. Supp. 2d 1246 (E.D. Wash. 2005) (ruling that attorney's certification could not authenticate a document where he had no personal knowledge); *Humphrey v. New York Life Ins. Co.*, 2006 WL 3837718 n.5 (E.D.N.Y. Dec. 28, 2006) (rejecting attorney declaration as to plaintiff's work performance); *Heighly v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1261 (C.D. Cal. 2003) (rejecting attorney's declaration as to plaintiff's confusion over insurance product); *Molski v. Price*, 224 F.R.D. 479, 484 (C.D. Cal. 2004) (sustaining objection to attorney's declaration because it was not based on personal knowledge). In this case, counsel's declaration is a brief assertion of claims set forth in the motion for partial summary judgment with attached evidence as exhibits. Premier raises no doubt as to the authenticity of Plaintiffs' exhibits except Exhibit B, a spreadsheet which sets forth Plaintiffs who claim they were not paid overtime even after the Court's May 16, 2007, order. Indeed, Premier uses Plaintiffs' Exhibits C, D, E, H, M and N in support of its argument. (Premier Br. ¶¶ 5-7, 14, 22, 24). The Court need not address the admissibility of Exhibit B because it has not relied on it to resolve Plaintiffs' Motion for Partial Summary Judgment. The Court will consider Plaintiffs' other exhibits. *See Enter. Rent-A-Car Co. v. U-Haul Int'l*, 327 F. Supp. 2d 1032, 1040 (E.D. Mo. 2004)

(accepting attorney's declaration with exhibits supporting a finding of personal jurisdiction).

**B. Liquidated Damages**

Where there is a finding of a violation of the FLSA, the right to recover liquidated damages is within the sound discretion of the district court if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act. The district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. *Bennett v. Carl's Towing, LLC*, 2005 WL 2101002 (W.D. Mo. Aug. 31, 2005).

On October 4, 2007, Premier admitted that some Plaintiffs' pay stubs reflected overtime which had not been paid. (Doc. 67). Plaintiffs now argue that under the FLSA Premier must pay liquidated damages unless Premier shows that it 1) acted in good faith and 2) had reasonable grounds for believing they were not violating the law. 29 U.S.C. §§ 216(d), 260. Plaintiffs contend that as a matter of law Premier cannot establish either requirement.

Premier first argues that its admission of overtime due constitutes evidence protected under Fed. R. Evid. 408(a)(2). To the extent that Premier argues that the Court may not consider Premier's failure to pay overtime because it was raised in the context of mediation, its argument fails. Rule 408 prohibits parties from using "conduct or

statements" made in the course of offers to compromise to prove "liability for, invalidity of, or amount" of a claim. *Id*. Rule 408 does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *United States v. Wilford*, 710 F.2d 439 n.21 (8th Cir. 1983). Paystubs reflecting unpaid overtime are not "conduct or statements" and the paystubs were otherwise discoverable.

In order to establish a claim for liquidated damages, Plaintiffs must prove that Premier violated the FLSA. *See Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2005 WL 758601, at *15 (D. Minn. March 30, 2005).[2] To the extent that this Court's October 4, 2007, order did not establish a finding of liability based upon Premier's records showing unpaid overtime, it does so now. There is no dispute about this issue.

Plaintiffs are, therefore, entitled to liquidated damages on that overtime earned unless Premier can establish its affirmative defense of good faith and a reasonable basis for believing that overtime was not due. Prior to July 13, 2006, Premier cannot prove its defense. Before that date, Premier presented no evidence that it requested advice from counsel or sought a determination from the Department of Labor ("DOL"). Its only evidence is an August 26, 2005, DOL opinion letter issued in response to a medical supply repair company's request as to the motor carrier exemption. Premier argues that letter shows that DOL "had found other similar positions exempt after the SAFETEA-UA

[2]Willful violations of the FLSA are governed by a three-year statute of limitations. 29 U.S.C. § 255(a). Employers willfully violate the FLSA when they know or showed reckless disregard for the matter of whether its conduct was prohibited. *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 130 (1988).

Amendment." (Premier Br. ¶ 5). However, Premier has not alleged that it relied on this letter when it decided not to pay overtime to its technicians who were operating non-commercial vehicles. Also, the letter limits the opinion to "the facts and circumstances described" in the company's request. (FLSA 2005-27 DOL Letter, 2). No reasonable fact finder could conclude that Premier has established its affirmative defense by the mere possession of this letter at some undetermined time, accompanied by no evidence of reliance. Therefore, Plaintiffs are awarded liquidated damages for their overtime which was due between August 10, 2005 and July 13, 2006, based on the face of the Plaintiffs' time sheets. *See Schultz v. All-Fund, Inc.*, 2007 U.S. Dist. LEXIS 59300 (D. Md. 2007) ("Defendants bore some duty to investigate whether their employees actually met the description of exempt employees contained in the DOL's letter. The record, however, contains no evidence that defendants made any attempt whatsoever to determine the extent to which plaintiffs . . . were the types of employees identified by the letter.").

After July 13, 2006, Premier argues that it did not pay overtime because it relied on a Compliance Action Report, issued to it during an investigation by the DOL, which found no violations for overtime or minimum wage compliance. (Premier Ex. 4; Aylor Aff. ¶ 13). Premier did not disclose this document to Plaintiffs during discovery. (Pl. Reply Dec. ¶ 3). Under Federal Rule of Civil Procedure 37(c)(1), evidence not disclosed under Rule 26(a), unless harmless, is not permitted for use as evidence at trial, at a hearing or on a motion. Fed. R. Civ. P. 37(c)(1); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). The failure to produce Exhibit 4 during discovery is clearly

harmless because Plaintiffs possessed the letter from at least October 18, 2006, and cannot claim surprise or prejudice.

After investigating six Premier locations, the DOL investigator determined that 29 U.S.C. § 213(b)(1) applied to "all installer/tech given movement of goods, No violations other than" record keeping. (Compliance Action Report, 2). The Compliance Action Report concluded:

> There had been much discussion of the exemption at 13b1 because the employer had been in the practice of paying overtime to installer/technicians who did not cross state lines . . . the application of the exemption based on the movement of goods in interstate commerce and intent of the sender was the focus of the discussion. The employer was advised that the exemption under 13b1 may come into question again in the future if guidance relating to the weight of the vehicle driven by an employee is issued by the department . . . . [the DOL investigator] advised that to comply in the future the firm must: pay all non-exempt employees at least the minimum wage; pay all non-exempt employees at lease time and one half for hours worked in excess of forty in a workweek; keep and maintain records as required by Part 516; and comply with all applicable Child Labor regulations. The employer agreed to fully comply in the future with all applicable provisions of the FLSA. *Id*. at 3.

A letter received as a result of a DOL investigation may sustain a defense of good faith reliance against a claim for liquidated damages. *Viciedo v. New Horizons Learning Ctr. of Columbus*, 246 F. Supp. 2d 886, 906 (S.D. Ohio 2003). While the Compliance Action Report is vague as to the discussions held with Premier, a reasonable fact finder could conclude that Premier, relying on the DOL's guidance, had reasonable grounds to deny technicians overtime after July 13, 2006. Therefore, summary judgment on Premier's affirmative defense is not appropriate.

Finally, Premier argues that between May 16, 2007, and October 12, 2007, it cannot be held liable for liquidated damages because it spent those months implementing a system to bring it into compliance with this Court's order, calculating overtime due and issuing paychecks. (Aylor Aff. ¶¶ 6-9). On May 16, 2007, this Court ruled that SAFETEA-LU modified the definition of "motor private carrier" and Premier technicians became non-exempt employees entitled to overtime. Premier argues, in essence, that it took time and effort to establish the system necessary to pay Plaintiffs for overtime due. A reasonable fact finder could conclude that Premier's efforts between May 16, 2007, and October 12, 2007, in determining unpaid overtime constituted good faith.

**C. Minimum Wage**

Plaintiffs next set forth several pay histories which show Premier failed to pay minimum wage and, therefore, those Plaintiffs are entitled to summary judgment.[3] Plaintiffs state that one technician, Christopher Harshman, was not paid for the last three months of his employment, December 2005 through February 2006. (Harshman Tr., 14-16). Premier responds that Harshman did not work after January 22, 2006, and was paid in January 2006. (Pl. Ex. I). Although Harshman's paycheck reflects gross pay of $390.99 and net pay of $28.37, the Court cannot conclude, based on the parties' assertions or the deductions noted on Harshman's paycheck, whether Premier paid him minimum wage. Certainly, there is a disputed fact as to whether he "was not paid for the

[3]Plaintiffs argue that Louis Watkins, one of Premier's technicians earned zero dollars for 21.5 hours of work during the period ending October 15, 2006, and is, therefore, entitled to summary judgment. Premier responds that it was not its deductions, but rather taxes and medical insurance withholding, that resulted in zero pay. Plaintiffs do not dispute Premier's explanation.

last three months" of his employment. Similarly, the parties dispute, and the evidence conflicts, as to whether Plaintiff Mallicoat was paid for his last week of work. (Mallicoat Dep., 102-103); (Premier Ex. 9).

Plaintiffs' remaining claims for summary judgment as to minimum wage involve four technicians who allegedly received less than minimum wage as a result of certain deductions.[4] Premier argues that certain deductions could be used by employees for purposes outside of their employment with Premier. However, when the employer is creditor, in this case by virtue of deducting charges for "drop material" or "other deductions," payment may "not be made by paycheck deductions which reduce net pay below minimum wage, even where the employee apparently consents to such an arrangement." *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1370 (5th Cir. 1973). For pay period ending November 26, 2006, Plaintiff Burger earned $222.69 for 44 hours of work, after Premier deducted $101.34 in drop material and "other" deductions resulting in an hourly wage of $5.06.[5] Plaintiff DeBrito earned $71.44 for 80 hours of work, after Premier deducted $528.56 in drop material resulting in an hourly wage of $0.89. Plaintiff Sincavage earned $144.20 for 40 hours of work, after Premier deducted charges for a "tool usage fee," "drop material purchases," "failed QC" and a "home

---

[4]Plaintiff Bartholomew earned $4.11 in one week of a period, in part because his deductions were calculated over the two-week pay period. Plaintiffs' claim for summary judgment as to Bartholomew is denied.

[5]Premier states that Burger earned $242.69. That is not correct. Burger earned $283.36 and spent $40.67 in reimbursable expenses. The figure of $222.69 includes taxes Premier validly deducted.

damage claim" leaving Sincavage with an hourly wage of $3.61. Finally, Plaintiff Mijal earned $57.74 for 29.50 hours of work, after Premier deducted $132.00 for drop material purchases and an $81.34 "bird dog" payment resulting in an hourly wage of $1.96. Premier further argues that Plaintiffs have failed to identify what "other" means on the pay records. Because other deductions that do not affect minimum wage are specifically identified on technicians' pay stubs, Premier cannot create a genuine issue of material fact by speculating that the "other" deductions may be for an employee's benefit or taken with the consent of the employee. Premier is in the best position to identify what expenses it deducts as "other" yet offers no such evidence. Plaintiffs are entitled to summary judgment as to Plaintiffs Burger, DeBrito, Sincavage and Mijal.[6]

**D. Record Keeping Requirements**

The FLSA provides that:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.
> 29 U.S.C. § 211(c).

Employers must "maintain and preserve" records of hours worked and total earnings for three years. 29 C.F.R. §§ 516.2, 516.5. The result of an employer's failure to maintain records in compliance with the FLSA is that an employee must only show that they

[6] The Court will not consider Plaintiffs' evidence concerning technicians who are not plaintiffs in this action.

"performed work for which [the employee] was improperly compensated and if [the employee] produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Martinez v. Global Fin. Servs., L.L.C.*, 2008 U.S. Dist. LEXIS 574 (S.D. Tex. 2008); *Brock v. Seto*, 790 F.2d 1446 (9th Cir. 1986). The burden then shifts to the employer to show the precise number of hours worked or to present sufficient evidence to negate the "reasonableness of the inference to be drawn from the employee's evidence." *Id.* Where both an employer and an employee fail to keep adequate records, the employee is entitled to satisfy his or her burden of proof with "admittedly inexact or approximate evidence." *Martinez v. Global Fin. Servs., L.L.C.*, 2008 U.S. Dist. LEXIS 574 (S.D. Tex. 2008).

Plaintiffs argue that Premier violated FLSA record keeping requirements as to nine Plaintiffs. While Plaintiffs have presented record keeping irregularities as to Watkins, Allen, Anderson, Eilders, Burger, Scott and Spotts, those irregularities do no entitle the Plaintiffs to a class wide, adverse inference against Premier. At best, these irregularities will assist Watkins, Allen, Anderson, Eilders, Burger, Scott and Spotts to establish the amount of their individual damages.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Premier's Motion for Summary Judgment [Docs. 75, 82] is GRANTED in part and DENIED in part.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY

United States District Judge

Dated: February 26, 2008
Jefferson City, Missouri